**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

---

ANDREW PERRONG,

      Plaintiff

vs.

MLA INTERNATIONAL AND JOSE AYALA

      Defendants.

Case No. 6:20-cv-01606

JURY TRIAL DEMANDED

### SECOND AMENDED COMPLAINT

### Preliminary Statement

1. As the Supreme Court explained at the end of its term last year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff Andrew Perrong (Plaintiff) brings this action under the TCPA alleging that MLA INTERNATIONAL, INC. (MLA International) commissioned a series of pre-recorded illegal telemarketing calls to originate new customers by calling residential numbers listed on the National Do Not Call Registry, like Mr. Perrong's number, which is prohibited by the TCPA. The calls were made by MLA International and at the supervision, direction, and control of its principal, JOSE AYALA (Ayala).

1

3. MLA International is owned, operated, and controlled by JOSE AYALA.

4. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes.

## Parties

5. Plaintiff Andrew Perrong is a Pennsylvania resident.

6. Defendant MLA INTERNATIONAL, INC. is a Florida corporation which is headquartered and has its principal place of business in this District at 142 Wilshire Blvd in Casselberry, Florida 32707. It was subsequently administratively dissolved on September 25, 2020 for failure to file an annual report.

7. Defendant JOSE AYALA is domiciled and resides in this District.

## Jurisdiction & Venue

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendants are residents of this District.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(3).

13. The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B).

14. According to findings by the Federal Communication Commission (FCC), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls (robocalls) to wireless numbers, services for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a

>telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016, 10:30 AM), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls [https://archive.is/w2afC] (statement of FCC chairman).

17. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

18. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc [https://archive.is/oPZSW].

19. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html [https://archive.is/mS9Fb]; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018, 10:30 PM), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203 [https://archive.is/V2UYp].

20. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*, YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

21. According to online robocall tracking service "YouMail," 5.6 billion robocalls were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index*, YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time*, YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

22. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and

232,000 complaints in 2018. *Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

The National Do Not Call Registry

23. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

24. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

25. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Defendants' Telemarketing**

26. Defendant MLA International is a call center and marketing firm that specializes in selling leads for medical alert systems.

27. MLA International uses telemarketing to solicit potential customers, who are then sold as "leads" to medical alert system companies, whose contact with the public is limited.

28. One of the strategies used by the Defendants involves the use of automated and pre-recorded calls to solicit potential customers.

29. Medical alert system companies rely on MLA International and Mr. Ayala to automatically dial the telemarketing calls and to initiate the sales pitch.

30. The Plaintiff did not consent to receive these calls and his number is on the National Do Not Call Registry.

31. Since the filing of the First Amended Complaint in this case, on September 25, 2020, the Florida Secretary of State administratively dissolved MLA International for failure to file an annual report.

### The Calls to Mr. Perrong

32. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

33. Plaintiff has a private telephone number of (215) 322-XXXX.

34. The Plaintiff is charged for each call placed to that number.

35. The number is not associated with any business.

36. The number is on both the Federal and Pennsylvania State Do-Not-Call registries and was on such registries for more than thirty-one days prior to the calls.

37. The number is used for Mr. Perrong's personal residential use.

38. MLA International and Ayala placed at least twenty-six telemarketing calls to Plaintiff between January 10, 2019 and May 20, 2019.

39. Each call began by playing the same pre-recorded message:

> Hello. Press 1 Now. The first 100 callers will receive $2,000 in grocery coupons. If you're over the age of 55 and have had a slip and fall in the past 12 months, press 1 now to receive a medical alert device valued at $400 at no cost to you for

7

> the equipment. Press 1 now to receive your medical alert device and $2,000 in grocery coupons or press 3 to be removed from the marketing list. Again, press 1 now to receive your medical alert device and $2,000 in grocery coupon savings. So press 1 now to speak to an enrollment specialist NOW!

40. In addition to utilizing artificial or prerecorded voices, all calls were also placed using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

41. The system Defendants used to place the calls to Plaintiff is an ATDS because it would be illogical to store numbers or produce numbers in a pre-recorded calling campaign other than randomly or sequentially, such as by a human dialing the number manually and then playing the called party a recorded message.

42. The Caller ID Number on these calls came from a (211) or (121) area code. For instance, the caller ID would display 211-625-835.

43. (211) is an emergency services area code. (121) is an invalid area code.

44. The Caller ID Number would also usually be missing a digit, making the caller ID only 9 digits in length and thus further invalid.

45. The Caller ID Numbers appear to have been randomly generated and follow no set pattern. For instance, in chronological order, the first four caller IDs transmitted were 211-625-835, 211-505-380, 211-379-446, and 211-760-527.

46. The caller IDs Plaintiff received the calls from further support the fact that the system Defendants used had the capacity to store or produce telephone numbers to be called randomly therefore render it an ATDS, as all the caller IDs were manipulated to be random numbers in invalid or emergency area codes. It follows that if the dialer has the capacity to store or produce random numbers to transmit a caller ID, it also has the capacity to store or produce random telephone numbers to be dialed, especially because the equipment needed to manipulate a caller ID to display a random number is far more sophisticated than the equipment needed to place a call to a random telephone number.

47. The company was not identified in the pre-recorded message, so the Plaintiff responded by pressing "1" to speak with a live individual.

48. The live individual identified his company as "Medical First Alarm".

49. "Medical First Alarm" does not appear to be a registered company or fictitious name in any state or jurisdiction.

50. Moreover, neither "Medical First Alarm," Defendant MLA, nor Defendant Ayala are registered as telemarketers with the Office of Attorney General under Pennsylvania law.

51. The caller did not have any information about the Plaintiff and did not know who the Plaintiff was until the Plaintiff told the agent.

52. To secure the real company name, the Plaintiff provided his credit card information during the call.

53. The Plaintiff's purchase identified Medical Guardian, LLC as the merchant.

54. Prior to the calls, the Plaintiff had no business relationship with either of the Defendants, "Medical First Alarm," or Medical Guardian, LLC.

55. In discovery in an action against Medical Guardian, Medical Guardian identified MLA International and Mr. Ayala as the individuals who initiated the calls in question which ultimately resulted in the sale of a Medical Guardian system. *Perrong v. Medical Guardian, LLC*, No. 2:19-cv-02371 (E.D. Pa. May 31, 2019).

56. During the course of discovery in that action, it was revealed that MLA International and Mr. Ayala made the calls at issue. *Id.*

57. The communications received by Plaintiff demonstrate that the message was sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for medical alert services. This message therefore qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

58. The fact that the calls were not at all personalized, asked the Plaintiff to press one to speak with someone, came at random dates and times, and the fact that the callers had no information about the Plaintiff further supports the inference that the Defendants used an ATDS, such as one which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list." *Facebook*, 141 S. Ct. at 1171 n.7.

59. It is wholly consistent that a system calling numbers randomly would not have any information about the called party until the called party provided the information to them. By contrast, one would expect a caller to have some information as to the person they were calling if they were to manually dial a number.

60. As this Court has remarked, other courts have held, post-*Facebook*, that allegations similar to those as here of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of the random or sequential nature of the dialing device that gives rise to the inference at the pleadings stage that an ATDS was used. *See Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

61. The Plaintiff is ignorant of the exact process by which the system used by the Defendants operates other than drawing the reasonable inference and making the allegation that it stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the calls he received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

62. Mr. Ayala made the automated calls for MLA International. He either physically programmed the automatic dialer to dial them or instructed others to do the same.

63. Plaintiff was harmed by these calls. He was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff

because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

## Legal Claims

### Count One:
### Violation of the TCPA's Prohibition Against Calling Residential Numbers with an Artificial or Prerecorded Voice and Use of an ATDS

64. By placing at least twenty-six telemarketing calls to the Plaintiff using both an ATDS and with an artificial or pre-recorded voice, Defendants, jointly and severally, violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

65. This amounts to fifty-two violations since Defendants committed two violations per call. The first violation is using an ATDS to call a number for which the called party is charged for the call. 47 U.S.C. § 227(b)(1)(A)(iii). The second violation is by calling a residential line with an artificial or pre-recorded voice, which is a separate violation that does not require proving that an ATDS was used. 47 U.S.C. § 227(b)(1)(B).

66. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least fifty-two violations of the TCPA, 47 U.S.C. § 227(b), by making calls, except for emergency purposes, to the residential telephone line of Plaintiff using an artificial or prerecorded voice and through the initiation of calls using an ATDS to a number for which the called party is charged for the calls.

67. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500 in damages for each and every violation and call

made to his residential telephone line which used an artificial or prerecorded voice and which was initiated using an ATDS to his number, which is charged for the calls, in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

68. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating these provisions in 47 U.S.C. § 227(b) in the future.

69. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

## Count Two:
## Violation of the Pennsylvania Telemarketer Registration Act
## 73 Pa. Cons. Stat. § 2241

70. By placing at least twenty-six telemarketing calls to the Plaintiff without registering as telemarketers under Pennsylvania law, Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2243. Moreover, by failing to identify themselves and by sending inaccurate and invalid caller ID information, Defendants, jointly and severally violated 73 Pa. Cons. Stat. § 2245(5) and 2245.1.

71. This constitutes twenty-six violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 Pa. Cons. Stat. § 2246(a).

72. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act (PTRA), 73

Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's number, on the Pennsylvania Do-Not-Call registry, without registration.

73. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300 in damages for each and every call made to his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201. 73 Pa. Cons. Stat. § 2246(a).

74. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA in the future.

### Count Three:
### Violation of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

75. By placing at least twenty-six telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendants, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

76. This amounts to seventy-eight violations since Defendants committed three violations per call. The first violation is calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff

without having a Do-Not-Call policy in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

77. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least seventy-eight violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr. Perrong's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

78. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

79. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

80. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

      a.      Injunctive relief prohibiting Defendants from calling telephone numbers using an ATDS and/or artificial or prerecorded voice, and/or in violation of the PTRA, and/or in violation of the TCPA's implementing regulations.

      b.      Because of Defendants' violations of the TCPA's restrictions in 47 U.S.C. § 227(b), Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

      c.      Because of Defendants' violations of the PTRA, Plaintiff Perrong seeks for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

      d.      Because of Defendants' violations of the TCPA's implementing regulations, Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(5).

      e.      Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**
Dated: **July 17, 2021**

                                                    _____/s/_____
                                                                           Andrew Perrong
                                                                           *Plaintiff Pro-Se*
                                                                    1657 The Fairway #131
                                                                      Jenkintown, PA 19046
                                                                       Phone: 215-791-6957
                                                                  Facsimile: 888-329-0305
                                                                   andyperrong@gmail.com

## Certificate of Service

I hereby certify that on July 17, 2021, I electronically filed the foregoing with the Clerk of Court using the COVID-19 electronic filing form. I also certify that I sent a copy of the foregoing First Class Mail, Postage Prepaid to:

Jose Ayala
8136 Woodsworth Dr.
Orlando, FL 32817

MLA International, Inc.
8136 Woodsworth Dr.
Orlando, FL 32817

MLA International, Inc.
142 Wilshire Blvd.
Casselberry, Florida 32707


Dated: **July 17, 2021**

_____/s/_____
Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com